IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THOMAS G. MOODY,

      Petitioner,

                                                                                                              CASE NO. 2:09-cv-118

v.                                                                                         JUDGE FROST
                                                                                         MAGISTRATE JUDGE KING

MICHAEL R. JAKUBOW,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on its own motion, pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, to consider the sufficiency of the petition.[1] For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

        On December 12, 1997, appellant and his brother, Ronald

---

[1]The action was initially filed in the Western Division of this Court on January 22, 2009, *Complaint*, Doc. No. 1, and was thereafter transferred to this Court. *Order*, Doc. No. 6. This Court construed the action as presenting a challenge to petitioner's state court criminal conviction, *Order*, Doc. No. 7, and directed petitioner to file a petition under 28 U.S.C. §2254. *Id.* On April 7, 2009, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. *Petition*, Doc. No. 17.

Moody, were indicted on charges of murder with a firearm specification, in violation of R.C. 2903.02, felonious assault with a firearm specification, in violation of R.C. 2903.11, and having a weapon while under disability, in violation of R.C. 2923.13.

A joint trial against appellant and his brother began on September 10, 1998. Ronald Moody entered into a plea agreement after the first witness testified, and the trial continued against appellant. On September 22, 1998, the jury found appellant guilty of murder, felonious assault, and the firearm specifications. A nolle prosequi was entered on the weapon under disability count. Appellant was sentenced to a term of 15 years to life for murder plus a three-year firearm specification to be served consecutively to the murder count and eight years for felonious assault, to be served concurrently.

On October 23, 1998, appellant filed his notice of appeal raising three assignments of error. This court affirmed the judgment of conviction in a memorandum decision rendered on September 30, 1999. *State v. Moody* (Sept. 30, 1999), Franklin App. No. 98AP-1371. On December 29, 1999, appellant filed an application to reopen that was granted by this court on February 22, 2000.

On March 13, 2001, this court reversed appellant's conviction because of error in the jury instructions. *State v. Moody* (Mar. 13, 2001), Franklin App. No. 98AP-1371.

The first attempt to retry the case ended in a mistrial. The trial that is the subject of this appeal began on January 22, 2002.

The charges arose out of events that transpired on November 11, 1997. That afternoon, Ronald Moody got into an argument with a neighbor, Sylvester Harrington, about ownership of a pit bull puppy. The argument escalated into a fistfight between Harrington and Ronald Moody and appellant and Paul Holder. As Harrington and Holder began getting the better of the Moody brothers, Ronald Moody pulled a knife and the fight stopped. Ronald Moody drove off, and when he returned he had two handguns, one of which he gave to appellant.

2

Appellant was standing on his porch and Ronald Moody was standing on a set of steps leading to the sidewalk when a group of youths approached appellant's house. Some of the youths were friends and associates of Harrington and Holder. Words were exchanged, and Ronald Moody pulled out a gun and began shooting. Appellant also pulled his gun and began firing. Lamarr Newbern was wounded and Khadaffi Johnson was killed.

As in the first trial, witnesses offered conflicting testimony as to appellant's role in the shootings. Judith Johnson, Sylvester Harrington's mother, testified that she observed both the initial fistfight and the shooting. With respect to the shooting, Johnson testified that she saw Lamarr Newbern start to remove his jacket as if he were going to fight, when both brothers opened fire. She did not actually see the guns, but saw a cloud of smoke coming from each of their hands. Johnson testified that both brothers were taking direct aim, moving their hands trying to get a target.

Zachariah Brown, who was part of the group that approached appellant's home, testified that Ronald Moody shot Lamarr Newbern. Brown testified that he then began running, looked back, and saw appellant shoot Khadaffi Johnson. However, when the police interviewed Brown that evening, he never indicated that appellant shot Johnson.

Paul Holder, who was a friend to both of the victims, was unavailable for trial, but his testimony from the first trial was read into the record. Holder testified that Ronald Moody shot both Lamarr Newbern and Khadaffi Johnson.

After the shooting, appellant gave his gun to Ronald Moody who fled the scene. Appellant remained at his house where he was arrested by police. As he was being placed in a police cruiser, appellant stated that he had shot someone. Appellant later appeared on a local television news broadcast and made the following statement that was played to the jury:

"I told them point blank I shot him, I mean, I did. I shot him, and I'm sorry for the family, but these kids had a gun. He left

me no choice. He showed a gun. I shot him, then I just turned the gun on the rest of the crowd and started shooting at all the rest of the people that were out there. So my brother wasn't there to do it. And they just cited him because of his long criminal history. And this is backwards. It's wrong." (Jan. 30, 2002 Tr., at 226.)

Appellant testified on his own behalf. He described the conflict over the puppy, and the fight that followed. Appellant stated that after his brother left, Sylvester Harrington and Paul Holder threatened to get him later, burn his house, and tear up his car. Appellant observed a person he later learned to be Lamarr Newbern pacing in front of his house with a cordless phone, making and receiving calls. Shortly thereafter, people began to show up, and Newbern would look over at appellant. Eventually, the group split up; half of them went into Newbern's house, and the other half went across the street where they were met my Paul Holder and Sylvester Harrington.

Ronald Moody returned on foot and handed appellant a gun. Appellant unzipped his coat and stuck the gun in his pants. Appellant stated that he went to his porch and stood in front of the door, and his brother walked to the edge of the steps that led down to the sidewalk. As the group of youths approached, Lamarr Newbern and Ronald Moody were staring at each other. Newbern and Ronald Moody exchanged words. Appellant testified that his brother first shot Khadaffi Johnson, then walked down the steps and shot Lamarr Newbern point blank in the chest. At that point, according to appellant, everyone then began to run. Appellant stated that his brother then went out into the street and continued shooting at people. Appellant testified that after Newbern was shot, appellant raised his gun in the air and emptied it. Appellant also testified that when he was arrested he told his nephew that he did it in order to protect his brother. Appellant said that he and his brother and sister came up with a plan in which Ronald Moody would turn himself in, and appellant would go to the news and say he (appellant) did it.

Following deliberations, on January 31, 2002, the jury returned

> guilty verdicts on all counts. On February 6, 2002, the trial court sentenced appellant to the same term the trial court imposed originally: 15 years to life for murder; a three-year firearm specification to be served consecutively to the murder count; and, eight years for felonious assault to be served concurrently.

*State v. Moody*, 2003 WL 722834 (Ohio App. 10th Dist. March 4, 2003). On March 4, 2003, the appellate court affirmed the trial court's judgment. *Id.* Petitioner indicates that the Ohio Supreme Court denied his subsequent appeal on July 16, 2003. *See Petition, Exhibits D-1, D-2.* Petitioner indicates that, on April 7, 2003, he filed an application to reopen his appeal, which action was denied on April 10, 2003. *See Petition.* Petitioner also pursued post conviction relief. On August 15, 2006, he filed a motion for "Condition for Waiver of specified additional Court Costs." *See State v. Moody*, 2007 WL 1707370 (Ohio App. 10th Dist. June 14, 2007).

> [Petitioner] asked the trial court to suspend collection of the costs assessed against him until he was released from prison and employed. The state opposed the motion, contending indigency does not shield a defendant from the imposition and collection of court costs. The state further argued that not only did *res judicata* bar defendant's motion, but his motion also lacked evidentiary documentation. Defendant replied that the state misinterpreted his motion, as he was not seeking to have court costs waived, but only to have collection postponed.
>
> On September 28, 2006, the trial court journalized a decision overruling defendant's motion.

*Id.* On June 14, 2007, the appellate court affirmed the trial court's judgment. On October 24, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal from that decision. *State v. Moody*, 115 Ohio St.3d 1443 (2007).

5

As previously noted, this case was filed on January 22, 2009, and on April 3, 2009, petitioner executed the *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. *Petition,* Doc. No. 17. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Prosecutorial misconduct/vindictive prosecution; double jeopardy; multiple punishments for a single offense; due process.
>
> 2. Contempt of court - prosecutorial misconduct – separation of powers, vindictive prosecution – cruel and unusual punishment – double jeopardy – due process.
>
> 3. Res judicata – in case No. 01-816, the denial of plaintiff-State of Ohio's motion to the Supreme Court of Ohio to accept jurisdiction of Case No. 98AP 1371.
>
> 4. Timeliness – pursuant Fed.Civ.P. Rule 60(b).

However, the instant action is time-barred.

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. §2244(d) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on October 14, 2003, *i.e.,* ninety days after the Ohio Supreme Court's July 16, 2003, dismissal of his appeal, when the time period expired to file a petition for a writ of *certiorari* to the United States Supreme Court. *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The statute of limitations expired one year later, on October 14, 2004. Still, petitioner waited years later, until January 22, 2009, to pursue federal habeas corpus relief. *See* Doc. No. 1. Petitioner's August 2006, post conviction petition did not toll or otherwise affect the running of the statute of limitations in this case, since the statute of limitations had already long since expired. "The tolling provision does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 601 (6th Cir.2003), citing *Rashid v. Khulmann*, 991 F.Supp. 254, 259 (S.D.N.Y. 1998); *Winkfield v. Bagley*, 66 Fed.Appx.

7

578 (unpublished), 2003 WL 21259699 (6th Cir. May 28, 2003)(same). Further, petitioner has failed to allege any extraordinary circumstances that would justify equitable tolling of the statute of limitations for the time period at issue here. *See Jurado v. Burt*, 337 F.3d 638, 643 (6th Cir. 2003).

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as untimely.

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

<pre>                                                       s/ Norah McCann King
                                                       Norah McCann King
                                                       United States Magistrate Judge
</pre>

April 17, 2009